**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| CAROL A. BROADWELL, | ) |
| | ) |
|     PLAINTIFF, | ) |
| | ) |
| vs. | )   CASE NO. 07-CV-610-FHM |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of the | ) |
| Social Security Administration, | ) |
| | ) |
|     DEFENDANT. | ) |

## OPINION AND ORDER

Plaintiff, Carol A. Broadwell, seeks judicial review of a decision of the Commissioner of the Social Security Administration denying Social Security disability benefits.[1] In accordance with 28 U.S.C. § 636(c)(1) & (3) the parties have consented to proceed before a United States Magistrate Judge.

The role of the Court in reviewing the decision of the Commissioner under 42 U.S.C. §405(g) is limited to determining whether the decision is supported by substantial evidence and whether the decision contains a sufficient basis to determine that the Commissioner has applied the correct legal standards. *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Doyal v. Barnhart*, 331 F.3d 758 (10th Cir.

---

[1] Plaintiff's August 23, 2004 applications for Disability Insurance and Supplemental Security Income benefits were denied initially and upon reconsideration. A hearing before an Administrative Law Judge (ALJ) was held August 29, 2006. By decision dated December 14, 2006, the ALJ entered the findings which are the subject of this appeal. The Appeals Council denied review of the findings of the ALJ on August 21, 2007. The action of the Appeals Council represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

2003).  The Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. *White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

Plaintiff was 52 years old at the time of the hearing. [R. 461].  She claims to have been unable to work since March 15, 2003, due to major depressive disorder, anxiety, ADHD, fibromyalgia and back and hip pain. [R. 460-464, 470-475].  The ALJ determined that Plaintiff has severe impairments consisting of major depression, panic disorder with agoraphobia and opiate and alcohol dependence, but that she retains the residual functional capacity (RFC) to perform light and sedentary work activity with a moderate limitation in her capacity for interacting with the public. [R. 16].  Based upon the testimony of a vocational expert (VE), the ALJ found that Plaintiff could return to her past relevant work as a secretary with that RFC. [R. 18].  In an alternative finding, he determined there are other jobs available in the economy in significant numbers that Plaintiff could perform. [R.18].  He concluded, therefore, that Plaintiff is not disabled as defined by the Social Security Act. [R. 19].  The case was thus decided at step four, with an alternative step five finding, of the five-step evaluative sequence for determining whether a claimant is disabled. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005) (describing the five steps); *Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing five steps in detail).

Plaintiff asserts the following errors: 1) the ALJ failed to properly weigh the evidence provided by the non-examining, non-treating reviewing experts from the State

2

agency, ignored documented medical conditions as impairments at steps 2 and 3 of the sequential evaluation process which impacted on his decision at steps 4 and 5, and propounded an improper hypothetical to the VE; and 2) the ALJ failed to perform a proper credibility determination because he denied medical evidence of arthritis, misconstrued treatment for pain, ignored evidence of mental limitations and deterioration, and selectively discussed the evidence of record.  For the reasons discussed below, the Court affirms the decision of the Commissioner.

## Medical Record

The administrative record contains medical documentation of Plaintiff's long-standing mental impairments including hospitalization following a suicide attempt in 2001. [R. 150-184, 213-253].  The medical evidence also reflects an assessment by Plaintiff's general care physician in 2001 of fibromyalgia TTP, total hip OA, anxiety and depression. [R. 224].  Plaintiff claims she became disabled on March 15, 2003. [R. 52, 460].

Records from Plaintiff's treating physicians indicate Plaintiff was prescribed Effexor, Xanax and Neurotin[2] from April 23, 2003 through August 27, 2003. [R. 211-212].  After a fall while on vacation in Florida, Plaintiff complained of right hip, lower back, right shoulder, right arm and right knee cap pain and stiffness. [R. 206-207].  She

---

[2] Effexor XR is an antidepressant. *Physicians' Desk Reference (PDR) Online* 9040-2325, database updated May 2007, Effexor XR Capsules (Wyeth). Xanax is indicated for management of anxiety disorder or the short-term relief of symptoms of anxiety. PDR 53rd ed. (1999) 2516. Neurontin is indicated as adjunctive therapy in the treatment of partial seizures with and without secondary generalization in adults with epilepsy. PDR 53rd ed. 2301-2302.

3

was prescribed Lortab and Flexeril[3] and apparently was treated by a chiropractor.[4] [R. 140-145].

On December 23, 2004, Plaintiff was seen at the Tulsa Regional Medical Center (TRMC) for injuries she sustained in a fall while moving furniture. [R. 308-316]. She was diagnosed with rib contusions and lumbar strain. *Id.* At her follow-up examination on December 30, 2004, Plaintiff complained of worsened rib pain. [R. 317-324]. The examining physician identified no significant change but stated that Plaintiff's breath smelled of alcohol and that Plaintiff was advised that alcohol, Xanax and Lortab should not be mixed. *Id.*

Although no treatment notes appear in the record for the time period between November 25, 2003 and June 9, 2004, the record indicates Plaintiff was prescribed medication by physicians at Family & Children's Mental Health Services (FC&S) during that time frame. [R. 289-290]. Treatment notes by case managers at F&CS from June 2004 through August 2006 are contained in the record. [R. 255-290, 329-356, 419-446]. The case managers saw Plaintiff on a bi-weekly basis and advised her on available social and legal services, advocated on her behalf for free medication and taught her techniques for communication, self-control, handling conflict and coping with stress. *Id.* On June 13, 2006, Plaintiff was described by her case manager as presenting with

---

[3] Lortab (hydrocodone bitartrate and acetaminophen) is a semisynthetic narcotic analgesic and antitussive indicated for relief of moderate to moderately severe pain. PDR 53rd ed. 3162. Flexeril is indicated as an adjunct to rest and physical therapy for relief of muscle spasm associated with acute, painful musculoskeletal conditions. *Id.* at 1793.

[4] No treatment or progress notes appear in the record; only the itemized statement.

4

semi-bright affect, calm mood, attentive with good eye contact and well-groomed. [R. 419].

Plaintiff's psychiatrist at FC&S was B. Touchet, M.D. [R. 257-259, 261, 448-451]. On August 24, 2004, Dr. Touchet diagnosed major depression - some return of residual symptoms, ADHD, alcohol dependence and panic disorder. [R. 261]. He prescribed Stattera for ADHD and depression augmentation with her other medication. *Id.* On September 21, 2004, Dr. Touchet recorded Plaintiff's complaints that her memory remained a problem and that she was disappointed she had not found a job. [R. 259]. He planned to titrate her Stattera dosage. *Id.* On October 19, 2004, Plaintiff reported increased panic attacks. [R. 256-258]. She had been "kicked out of boyfriend's house" but she was awaiting a settlement check from an injury in Florida that would cover two months rent. *Id.* Dr. Touchet noted increased Stattera was tolerated and that concentration was "a hair better." *Id.* He planned to continue medications with the expectation of decreased panic with decrease in stress. *Id.*

An October 5, 2005 notation by Patti Wheaton, MSN, ARNP, at the Faith Women's Clinic, indicates Plaintiff listed problems as "depression, OA, deg-joint disease, smoker, hyperthyroidism." [R. 416]. Gynecological and lab tests results were reviewed with Plaintiff on October 17, 2005. [R. 409-415]. Ms. Wheaton recommended aerobic exercise 30 minutes a day, five days a week and a well balanced diet. [R. 416].

The record contains a Mental Status Examination report by Denise LaGrand, Psy.D.,dated December 1, 2004. [R. 301-307]. Dr. LaGrand conducted a clinical interview, a mental status exam, the Wechsler Adult Intelligence Scale - Third Edition (WAIS-III) test and reviewed Plaintiff's 2001 medical records. Dr. LaGrand found

Plaintiff's speech was normal; her vocabulary and use of words to express herself were adequate; she appeared to understand verbal instructions and her thoughts were organized, logical and goal-directed. Plaintiff's concentration was low average and her cognitive functioning was low average, consistent with her estimated IQ. *Id.* Dr. LaGrand wrote:

> Ms. Broadwell's application for disability seems to be based on both mental and physical factors and this should be taken into account when determining her eligibility for SSI/Disability, as the combination of mental and physical symptoms leads to greater impairment and makes her less likely to be successful in a job setting.
>
> Her ability to handle the stress of a work setting or deal with supervisors or co-workers is low average. Her ability to understand, remember and carry out instructions is also low average. Physical problems (hip) and cognitive problems will interfere with her working effectively.

[R. 307].

Steven Y.M. Lee, M.D., examined and evaluated Plaintiff on January 18, 2005. [R. 324-328]. Subjective history taken from Plaintiff indicated her chief complaints consisted of inability to concentrate at work and arthritis causing sitting and standing difficulties [R. 324]. Dr. Lee's physical examination of Plaintiff revealed normal findings. Range of motion tests were all normal and there was no tenderness or muscle spasm in either the lumbosacral or cervical spine. [R. 326-328].

A physical RFC assessment was prepared by an agency consultant based upon Dr. Lee's findings on January 31, 2005. [R. 367-372]. Plaintiff was assessed as able to lift and/or carry 50 pounds occasionally and 25 pounds frequently. She could stand and/or walk and sit about 6 hours in an 8-hour workday. She had an unlimited ability

to push and/or pull and she had no postural, manipulative, visual, communicative or environmental limitations. *Id.*

Burnard L. Pearce, Ph.D., prepared a mental RFC assessment and PRT on February 1, 2005. [R. 358-366].  With regard to Plaintiff's ability to understand, remember and carry out detailed instructions, Dr. Pearce assessed moderate limitations. [R. 358].  He also assigned a moderate ability to interact appropriately with the general public. [R. 359].  All the other activities in the categories of understanding and memory, sustained concentration and persistence, social interaction and adaptation were found to be not significantly limited. [R. 358-360].  As explanation for his findings, Dr. Pearce wrote:

> Clt can understand, remember & carry out simple & some complex tasks under routine supervision. She can relate to coworkers & supervisors for work purposes. She can tolerate some involvement with the general public.

[R. 360].  Dr. Pearce's RFC findings were reviewed and affirmed by another agency physician on February 20, 2005. *Id.*  On the PRT form,[5] Dr. Pearce indicated Plaintiff's degree of limitation in restriction of activities of daily living, difficulties in maintaining social functioning, and difficulties in maintaining concentration, persistence or pace

---

[5] Under the regulations, when evaluating mental impairments, the agency must follow a "special technique." 20 C.F.R. §§ 404.1520a(a), 416.920a(a). The agency is required to rate the degree of a claimant's functional limitations caused by those impairments in the areas of "[a]ctivities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ then applies those ratings in determining whether the claimant's mental impairments are severe at step two and, if so, whether these severe impairments "meet[ ] or [are] equivalent in severity to a listed mental disorder" at step three. Id. §§ 404.1520a(d)(1-2), 416.920a(d)(1-2). At the ALJ hearing level, "[t]he decision must include a specific finding as to the degree of limitation in each of [those] functional areas." Id. §§ 404.1520a(e)(2), 416.920a(e)(2)

were moderate. [R. 364]. As to episodes of decompensation, each of extended duration, Dr. Pearce indicated there were none *Id.*

On November 17, 2005, Dennis A. Rawlings, M.D., filled out and signed a Mental Medical Source Statement after reviewing Plaintiff's treatment records from Tulsa Regional Medical Center, F&CS, Dr. Touchet, St. Francis Hospital, Laureatte and Jenks Health Team. [R. 377-378]. He also reviewed the consultative reports of Dr. LaGrand and Dr. Lee. *Id.* Based upon that review, Dr. Rawlings assessed a moderate limitation in Plaintiff's ability to interact appropriately with the general public. [R. 374]. He found no significant limitation in all the other categories of understanding and memory, sustained concentration and persistence, social interaction and adaptation. [R. 373-376].

Dr. Touchet adjusted Plaintiff's medications when she reported side effects on February 14, 2006, and March 14, 2006.[6] [R. 451, 449]. On April 18, 2006, Dr. Touchet noted Plaintiff's mood was "pretty good;" that she sleeps well and "[p]anic occurs weekly [up to] moderate intensity but not full blown." [R. 448]. He indicated Plaintiff "takes deep breaths" and that she reported no alcohol use. His observations were: bright affect; alert; well-groomed; "[t]houghts good - directed." He planned to continue Plaintiff's medications as prescribed and to see her back in four weeks. *Id.*

### The ALJ's Decision

The ALJ found at step two that Plaintiff's severe impairments were: major depression, panic disorder with agoraphobia, and opiate and alcohol dependence. [R.

---

[6] Dr. Touchet substituted Wellbutrin for Lexapro upon Plaintiff's request. Wellbutrin is an antidepressant. PDR 53rd ed. 1252.

15]. He determined Plaintiff's allegations of osteoarthritis and fibromyalgia were not confirmed by documentation in the medical record and so were not severe impairments at step two. He evaluated Plaintiff's impairments under the Listings for 12.04, Affective Disorders; 12.06, Anxiety Related Disorders; and 12.09, Substance Addiction Disorders and determined none were met or equaled. [R. 16]. After summarizing Plaintiff's testimony and the medical record, devoting specific attention to Plaintiff's treatment notations from F&CS and Dr. Rawlings' evaluation, the ALJ said:

> The undersigned is persuaded that the claimant's psychological problems would significantly affect her ability to engage in work related activities. It is further concluded that the record establishes the claimant's psychological problems resulted in mild restriction of activities of daily living (she interacts adequately with family and household members), moderate difficulties in maintain social functioning (she has allowed people to take advantage of her), mild deficiencies of concentration, persistence, or pace; (there is no apparent organic cause for what she perceives as a significant memory and concentration loss) and no episodes of deterioration or decompensation of extended duration.

[R. 17]. The ALJ assessed an RFC for the full range of light work with a moderate limitation in capacity for interacting with the public. [R. 16].

## Consideration of the Evidence

Plaintiff complains the ALJ failed to properly weigh the evidence provided by the non-examining, non-treating, reviewing experts from the state agency. Pointing to the agency consultant's moderate findings on the PRT form, Plaintiff first complains the ALJ found her moderate difficulties in maintaining social functioning were due to allowing people to take advantage of her. [Plaintiff's Opening Brief, Dkt. 15, p. 3]. However, a fair reading of the ALJ's decision reflects his reference to Plaintiff allowing people to

take advantage of her was cited as an example of her moderate difficulties in maintaining social functioning, not a cause. Based upon such evidence, the ALJ found Plaintiff suffers a moderate degree of limitation in this functional area. [R. 17]. This finding comports with the opinions of Dr. Pearce and Dr. Rawlings that Plaintiff has moderate limitations in social interaction. [R. 364, 374]. Nothing in the record establishes that Plaintiff had a greater degree of limitation in social functioning than was determined by the ALJ.

Next, Plaintiff argues that because the ALJ assessed only mild restrictions of her activities of daily living (ADLs) and mild limitations in the areas of maintaining concentration, persistence or pace, he improperly ignored medical evidence. The Court does not agree.

In addition to the PRT findings cited by Plaintiff, the medical evidence before the ALJ consisted of consultative mental RFC assessments ranging from "no significant limitation" to "moderate" limitations in sustained concentration and persistence. Dr. LaGrand's testing in 2004 revealed Plaintiff had low average cognitive functioning and concentration and low average ability to handle work stress and deal with co-workers and supervisors. Dr. LaGrand opined these factors would interfere with Plaintiff's ability to work effectively. However, she did not suggest that Plaintiff was incapable of performing work activities because of these factors. The ALJ acknowledged and discussed Dr. LaGrand's report in his decision. [R. 17]. He also had benefit of Plaintiff's treatment records generated after Dr. LaGrand's mental status exam and after Dr. Pearce's evaluation forms were filled out and signed. In addition, he had Dr. Rawlings' RFC assessment which was based upon his review of all Plaintiff's treatment records

10

from 2001 through 2005 and the examining and consultative experts' opinions, including Dr. LaGrand's test results.

It is the ALJ's province, as fact finder, to examine the record and resolve conflicts in the medical evidence. *See Eggleston v. Bowen*, 851 F.2d 1244, 1247 (10th Cir. 1988) (it is for the ALJ, not the court, to weigh competing medical evidence). The ALJ is not bound by a finding by a state agency medical or psychological consultant or other program physician or psychologist as to whether an individual's impairment(s) is equivalent in severity to any impairment in the Listing of Impairments.[7] *See* Soc.Sec.Ruling (SSR) 96-6p, 1996 WL 374180, at *2 (ALJ is bound by opinions of agency medical consultants only insofar as they are supported by evidence in the case record). The ALJ was entitled to review the medical evidence and determine the weight to be accorded the opinions.

The ALJ expressly stated that he had considered the entire record and that he had weighed opinion evidence in accordance with the requirements of the agency's regulations and rulings. [R. 16]. The ALJ's decision reflects that he considered all the evidence, including medical opinions and treatment records from Plaintiff's psychiatrist and case managers. [R. 16-17]. The ALJ adequately discussed his conclusions regarding Plaintiff's functional limitations and linked his findings to substantial evidence in the record.

---

[7] The listings set out at 20 CFR pt. 404, subpt. P, App. 1 (pt. A) (1989), are descriptions of various physical and mental illnesses and abnormalities, most of which are categorized by the body system they affect. Each impairment is defined in terms of several specific medical signs, symptoms, or laboratory test results. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.

Contrary to Plaintiff's contentions, the ALJ did not conclude that Plaintiff does not suffer from a severe mental impairment. Rather, he determined Plaintiff has major depression, panic disorder with agoraphobia and opiate and alcohol dependence. [R. 15]. After review of the record and Plaintiff's testimony, he concluded that despite Plaintiff's severe mental impairments, she is capable of performing light work that does not require interaction with the general public. [R. 16, 489]. The record supports such a conclusion. The Court finds the ALJ committed no reversible error in adopting the findings of Dr. Rawlings in his RFC assessment rather than those expressed by Dr. Pearce. The Court finds the ALJ's determination is supported by substantial evidence in the record.

As to Plaintiff's complaint that the ALJ improperly ignored evidence of severe physical impairments at step two, the Court finds no basis for reversal. Plaintiff cites several pages containing what she characterizes as diagnoses "demonstrable by medically acceptable clinical and laboratory techniques." [Plaintiff's brief, Dkt. 15, p. 4]. Three of the references to "OA" and "DJD" are recitations of medical history given by Plaintiff to medical care providers in 2001, well before Plaintiff's claimed disability onset date. [R. 172, 220, 224]. The notes from Jenks Health Clinic where Plaintiff was seeking treatment for menopausal symptoms include "OA" among the clinician's impressions, but there is no indication that treatment for osteoarthritis-related symptoms was rendered. [R. 208-210]. Likewise, the Tulsa Regional Medical Center emergency room physician reported on December 23, 2004, that Plaintiff's medical history included DJD but there is no evidence that the condition was clinically diagnosed or treated. [R.

310]. The same is true of the physical problems Plaintiff complained of while undergoing treatment for menopausal symptoms at the Faith Women's Clinic. [R. 416].

The record shows that information on fibromyalgia was given to Plaintiff on April 28, 2001, but there was no recorded treatment for such a condition. As pointed out by the Commissioner [Dkt. 18, p. 10], there was no comparison of Plaintiff's symptoms to the established criteria for fibromyalgia by any of her treating or examining physicians. Nor was there further mention of chronic pain syndrome after 2001 in Plaintiff's treatment records. Plaintiff did not allege chronic pain syndrome as a severe impairment in her application materials or during her hearing testimony. There is no evidence in the record that Plaintiff was ever diagnosed with or treated for a somatoform disorder.[8]

Dr. Rawlings submitted a detailed list of the treatment and examination records he had reviewed in conjunction with his evaluation of Plaintiff's RFC. [R. 376-379]. He noted those records included a history of OA, fibromyalgia, chronic pain syndrom (sic), opiate dependence and alcohol dependence but he also said: "Impairment never severe based on records." [R. 376]. His list of reviewed documents does not constitute evidence that he had diagnosed medically determinable severe impairments. *See* 20 C.F.R. 404.1513(b)(1)(4) (diagnosis [is a] statement of disease or injury based on its signs and symptoms).

---

[8] Dr. Rawlings included Listing 12.07, Somatoform Disorders, in response to a question regarding the listings under which he had evaluated Plaintiff's impairments. [R. 379]. He responded to a subsequent question that Plaintiff did not meet a listed impairment. *Id.*

Contrary to Plaintiff's claims, this evidence is not sufficient to establish a severe impairment at step two. There is no suggestion that any functional limitations were found or that restrictions on activities were imposed due to osteoarthritis, degenerative joint disease, fibromyalgia, or chronic pain syndrome by any of Plaintiff's health care providers. The mere diagnosis of an impairment or condition is not sufficient to sustain a finding of disability. *Bernal v. Bowen*, 851 F.2d 297, 301 (10th Cir. 1988). An impairment is not severe if it does not significantly limit a person's physical or mental ability to do basic work activities. *Branum v. Barnhart*, 385 F.3d 1268 (10th Cir. 2004); 20 C.F.R. § 416.921(a).

The ALJ properly relied upon the medical opinion of Dr. Lee, who examined Plaintiff and found normal physical functioning and range of motion, and the RFC assessment by the agency consultative physician who reviewed Plaintiff's medical records. The Court finds no error was committed by the ALJ in concluding that these impairments did not rise to the level of severity required at step two as defined by the regulations. 20 C.F.R. §§ 404.1521(a); 416.921(a); SSR 03-3p, 2003 WL 22813114, at *2; *Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004) (mere presence of a condition or ailment is not enough to get claimant past step two) (quoting *Hinkle v. Apfel*, 132 F.3d 1348, 1352 (10th Cir. 1997).

Plaintiff has several complaints with regard to the ALJ's questioning of the vocational expert (VE) at the hearing. [Plaintiff's brief, Dkt. 15, p. 5]. The first is directed at the ALJ's failure to ask the VE on the record if her testimony conflicted with the DOT, as required by SSR 00-04p and *Haddock v. Apfel*, 196 F.3d 1084, 1088 (10th Cir. 1999) (ALJ has affirmative duty to inquire about, resolve and explain any conflict between

14

VE's testimony and the DOT before relying upon VE's testimony to support determination of nondisability). At the hearing, after the VE described the past jobs Plaintiff had performed, the ALJ asked the VE whether Plaintiff had performed her past jobs "consistent with the DOT." [R. 490]. The VE answered: "Apparently, yes." *Id.*

Plaintiff does not identify any inconsistencies between the VE's testimony and the DOT. Her complaints with regard to the hypothetical posed by the ALJ to the VE relate to restrictions she contends should have been included in her RFC. As previously stated, the Court does not agree that the "established limitations" Plaintiff describes were improperly rejected by the ALJ. Hypothetical questions need only reflect impairments and limitations that are borne out by the evidentiary record. *Decker v. Chater,* 86 F.3d 953, 955 (10th Cir.1996). Thus, Plaintiff's allegation error on this basis is without merit.

With regard to Plaintiff's claim that the demands of her past relevant work were not properly explored, the Commissioner is correct that Plaintiff's descriptions of her work as an administrative assistant and secretary are similar. [Dkt. 18, p. 12; R. 117, 120-121, 124]. Furthermore, Plaintiff stated at the hearing that her inability to perform her past job was caused by problems with memory, lifting and bending to find files [R. 464] and pushing back and forth from her desk [R. 481]. These statements were found to be not credible by the ALJ, which will be discussed later in this opinion and order. There is no suggestion in the record that Plaintiff could not perform her work duties as a secretary or administrative assistant because of "poor spelling, grammar, word usage and penmanship" as is now alleged in her opening brief. [Dkt. 15, p. 6]. The evidence Plaintiff describes as "uncontroverted" was deemed inconsistent with other medical evidence in the record and

the ALJ was not required to include limitations based upon those alleged impairments in his RFC assessment. The burden of proof to establish a disability which prevents her from performing her past relevant work was Plaintiff's. *See Musgrave v. Sullivan*, 966 F.2d 1371, 1376 (10th Cir. 1992) (quotation omitted). Plaintiff did not meet her burden in this case. The Court finds this allegation of error is without merit.[9]

### Credibility Determination

The ALJ acknowledged Plaintiff's testimony regarding her concentration and memory problems and her physical complaints. [R. 16]. He compared her statements with the medical records, including stress-inducing incidents she had been counseled through at FC&S. [R. 16-17]. He concluded Plaintiff's claims concerning the intensity, persistence and limiting effects of her symptoms were not entirely credible. [R. 17]. Plaintiff's challenges to the ALJ's credibility determination are linked to her claims of additional and more limiting impairments than the ALJ found. [Dkt. 15, p 7-9]. As previously discussed, the Court has determined the ALJ's step two findings and RFC assessment are supported by substantial evidence in the record. Therefore, Plaintiff's argument that the medical evidence supports her testimony is without merit.

With regard to Plaintiff's contentions that the ALJ did not properly consider Plaintiff's compliance with treatment recommendations, her ADLs, past job history and the observations of agency clerks as positive credibility factors, Plaintiff is essentially

---

[9] Defendant asserts Plaintiff's failure to challenge the ALJ's alternative step five finding forecloses success on appeal regardless of the merit of her arguments relating to step four. *Murrell v. Shalala*, 43 F.3d 1388, 1390 (10th Cir. 1994) (recognizing the benefit of alternative determinations in social security review process); *Berna v. Chater*, 101 F.3d 631, 633 (10th Cir. 1996) (unchallenged alternative rationale sufficient basis for denial of benefits). In her Reply brief, Plaintiff appears to assert a challenge to the step five determination by contending the ALJ's RFC is "impossible." [Dkt. 22, p. 4]. The Court, however, has concluded the ALJ's RFC is supported by substantial evidence in the record.

asking the Court to reweigh the evidence and to substitute its judgment for that of the ALJ. This it cannot do. The ALJ is "the individual optimally positioned to observe and assess witness credibility." *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991). "Credibility determinations are peculiarly the province of the finder of fact, and [the court] will not upset such determinations when supported by substantial evidence." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995). The ALJ must cite specific evidence relevant to the factors used in evaluating a claimant's subjective complaints, and explain the basis for finding those complaints are not credible. *Id.* This process, however, "does not require a formalistic factor-by-factor recitation of the evidence." *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

After review, the Court finds that the ALJ provided a sufficient link between the evidence and his determination that Plaintiff's allegations were not entirely credible. Moreover, the Court concludes that his credibility assessment is supported by substantial evidence in the record.

## Conclusion

The ALJ's decision demonstrates that he properly considered the medical opinions and other evidence in the record in concluding that Plaintiff is not disabled. The record as a whole contains substantial evidence to support the determination of the ALJ. Accordingly, the decision of the Commissioner is AFFIRMED.

SO ORDERED this 3rd day of December, 2008.

*Frank H. McCarthy*
FRANK H. McCARTHY
UNITED STATES MAGISTRATE JUDGE

17